UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| IRMA RODRIGUEZ CASTRO, INDIVIDUALLY and A/N/F Of M.A.C.<br>    *Plaintiffs*,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br>    *Defendant*. | §<br>§<br>§<br>§<br>§<br>§     CIVIL ACTION NO. _____<br>§<br>§<br>§ |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW, Irma Rodriguez Castro and M.A.C., by and through Plaintiffs' undersigned attorney, and complains of Defendant, the United States of America (hereinafter "United States"), directly responsible for the personal injuries and property damages sustained, and would respectfully show the Court as follows:

### I.    PARTIES & SERVICE

1. Plaintiff Irma Rodriguez Castro is a natural person and a citizen of the State of Texas, residing in Hidalgo County, Texas. She was at all relevant times the owner and driver of the vehicle involved in the collision described below.

2. Plaintiff M.A.C. is a natural person and a citizen of Texas, residing in Hidalgo County, Texas. She was a passenger in the vehicle during the collision.

3. Defendant United States of America is sued under the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680. The United States, through its agency U.S. Customs and Border Protection ("CBP"), employed the individual CBP agent who was involved in the motor

vehicle accident described herein. That agent was, at all relevant times, an "employee of the Government" acting within the course and scope of his federal employment, as defined in 28 U.S.C. § 2671. Defendant United States may be served with process by serving the Acting U.S. Attorney for the Southern District of Texas, Mr. Nicholas J. Ganjei at 1000 Louisiana, Suite 2300, Houston, Texas 77002, and by sending a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States at U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530-0001. Service is requested at this time.

## II.   JURISDICTION & VENUE

4. This action is brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. The FTCA grants exclusive jurisdiction to the U.S. District Courts for claims against the United States for money damages for injury or loss of property or personal injury caused by the negligent or wrongful act or omission of a federal employee acting within the scope of employment, under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act occurred. Defendant United States of America, as sovereign, has waived immunity for such claims under the FTCA, and is the proper defendant in this action.

5. Venue is proper in the Southern District of Texas, McAllen Division, pursuant to 28 U.S.C. § 1402(b), because this is the judicial district where the plaintiffs reside and wherein the act or omission complained of occurred. The collision giving rise to this claim occurred in South Texas, within the Southern District of Texas, and upon information and belief, Plaintiffs are residents of Hidalgo County, Texas, which lies within this District and Division.

6. Plaintiffs have exhausted all required administrative remedies under 28 U.S.C. § 2675(a). Before filing this suit, each Plaintiff timely filed an administrative tort claim with the

appropriate federal agency, U.S. Customs and Border Protection ("CBP"), on or about February 14, 2025, providing details of the claim and a demand for a sum certain as required. By letters dated June 5, 2025, CBP issued final denials of each of the Plaintiffs' claims. Accordingly, all conditions precedent to filing this lawsuit under the FTCA have been satisfied.

7. This suit is being filed within six months of the date of mailing of the agency's final denial letters. It is therefore timely under the FTCA's statute of limitations, 28 U.S.C. § 2401(b), which provides that a tort claim against the United States is forever barred unless an action is begun within six months after the date of mailing of notice of final denial of the claim by the agency. The denial letters were dated June 5, 2025, and this Complaint is filed well before the six-month deadline.

### III.    FACTUAL BACKGROUND

8. On August 22, 2024, at approximately 9:15 PM, Plaintiff Irma Rodriguez Castro was driving her vehicle northbound on U.S. Highway 77 near the intersection with Farm-to-Market Road 1118 (FM 1118) in South Texas. Plaintiff M.A.C. was a passenger in the vehicle. It was dark, and the weather and road conditions were normal and dry. Irma was lawfully operating her vehicle on US-77, a through highway, with the right-of-way.

9. At the same time, a U.S. Customs and Border Protection agent (hereinafter "the CBP agent") was traveling eastbound on FM 1118, approaching the intersection with US-77. The intersection was controlled by a stop sign governing traffic from FM 1118 entering or crossing US-77. The CBP agent was driving a government-issued vehicle and was on duty, acting within the scope of his employment with CBP. Upon reaching the intersection, the CBP agent failed to stop and yield at the stop sign as required, and he proceeded to make a left turn onto northbound US-77, directly into the path of Plaintiffs' oncoming vehicle.

10. The CBP agent's failure to yield was a result of negligence. According to statements made at the scene, the agent was distracted by his cell phone and did not see Ms. Castro's vehicle traveling on the highway. Instead of coming to a complete stop and waiting until the highway was clear, the agent negligently entered the intersection without yielding. As a result, a violent collision occurred. The front or side of the CBP agent's vehicle struck Plaintiffs' vehicle at highway speed.

11. The force of the impact caused severe damage to Plaintiffs' vehicle and inflicted serious injuries on both Plaintiffs. The collision caused Plaintiff Irma Rodriguez Castro to lose consciousness at the scene and left both Plaintiffs disoriented and in pain. Emergency services were called, and the Plaintiffs were transported from the scene for medical evaluation and treatment. The investigating authorities determined that the CBP agent had failed to yield the right-of-way. The agent himself admitted at the scene that he had been looking at or handling his phone and was not paying full attention, leading him to run the stop sign and collide with the Plaintiffs' car.

12. The CBP agent's conduct violated Texas traffic laws and safety rules intended to prevent exactly this type of accident. Under Texas law, a driver approaching a stop sign must come to a complete stop and yield the right-of-way to any vehicle in the intersection or approaching on the through highway so closely as to be an immediate hazard. US-77 is a through highway at that location, and Plaintiffs' vehicle was clearly an immediate hazard given its presence on the highway. The agent's failure to stop and yield, while distracted by a phone, was unlawful and dangerous. He had a duty to keep a proper lookout, pay attention to the roadway, obey the stop sign, and yield to oncoming traffic – but he breached each of those duties.

13. Plaintiff Irma Rodriguez Castro's vehicle was catastrophically damaged in the crash. The impact crushed major portions of the car. The vehicle has since been declared a total loss by Irma's

auto insurance provider (Progressive). The approximate value of the vehicle (and other personal property damaged in the crash) is included in Plaintiffs' damages. Plaintiff, in her administrative claim, estimated property damage at approximately $100,000, accounting for the loss of the vehicle and any other personal property and out-of-pocket costs related to property damage.

14. As a direct result of the collision, Plaintiff Irma Rodriguez Castro suffered serious personal injuries. At the scene, Irma briefly lost consciousness due to head trauma. She sustained a concussion and head injury, as well as injuries to her neck and spine (cervical, thoracic, and lumbar regions). She experienced severe neck pain, mid-back and lower back pain, and radiating pain into her shoulders and arms. Irma also suffered injuries to both of her hands and wrists (from bracing for impact), as well as injuries to her left arm, left ankle and foot, right hand, and hips. She had significant bruising and contusions over her body, including chest and abdominal bruising from the seatbelt restraint and airbag deployment. In the weeks following the crash, Irma experienced frequent headaches, dizziness, and neck stiffness indicating possible post-concussive symptoms and whiplash. She required medical treatment including emergency care, diagnostic imaging (X-rays, CT scans or MRIs), and follow-up care for her orthopedic and neurological injuries.

15. Plaintiff M.A.C. also sustained significant injuries in the collision. M.A.C. suffered bodily injuries including severe whiplash to her neck, injuries to her back, and bruising across her chest and torso from the seatbelt. She hit her head in the collision and experienced a concussion or concussion-like symptoms (such as headaches, nausea, and light sensitivity) in the aftermath. M.A.C. also sustained injuries to her left shoulder and arm, and bruising on her legs and knees from the impact inside the vehicle. She endured immediate pain and distress at the scene and required emergency medical evaluation. In the days and weeks after, M.A.C. sought medical care for persistent neck and back pain, headaches, and shoulder pain. Her injuries, while serious, were

fortunately not life-threatening, but they have caused her significant pain and suffering and required ongoing therapy and treatment.

16. The collision was solely caused by the negligence of the CBP agent. Plaintiffs were not cited for any wrongdoing; they were lawfully driving on the highway with right-of-way. The CBP agent's failure to obey the stop sign and his distracted driving were the direct and proximate causes of the crash. No other vehicles or factors caused or contributed to the incident. At all times, the CBP agent was acting within the scope of his employment (driving a government vehicle in the course of his duties), making the United States legally responsible under the doctrine of respondeat superior and the FTCA.

## IV.   NEGLIGENCE AGAINST THE UNITED STATES

17. The Federal Tort Claims Act ("FTCA") grants jurisdiction for actions on monetary claims for injury, property loss or death caused by the negligent or wrongful acts or omissions of Government employees.  28 U.S.C. § 1346(b).  The United States is generally held liable if a private person would be liable for the same actions and/or omissions taken by the United States in accordance with the law of the place where the act or omission occurred. *Id*.  The duty of the United States in a tort action is defined in accordance with the law of the state where the negligence occurred.  *See* Richards v. United States, 369 U.S. 1 (1962).

18. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

19. In Texas, the elements for negligence are as follows: 1) the defendant owed a duty to the plaintiff; 2) the defendant breached the duty; and 3) the breach proximately caused the plaintiff's injuries.  See Nabors Drilling, U.S.A., Inc. v. Escoto, 288 S.W.3d 401 (Tex. 2009).

20. At all relevant times, the CBP agent (acting as an agent of Defendant United States) owed Plaintiffs a duty to exercise ordinary care in the operation of his motor vehicle. This includes the

duty to obey Texas traffic laws (such as stop sign and right-of-way rules), the duty to keep a proper lookout, the duty to pay full time and attention while driving, and the duty to avoid operating a vehicle in a manner that would endanger others on the road.

21. The CBP agent breached the above duties through various negligent acts or omissions, including but not limited to the following:

   a. Failing to stop at the stop sign and failed to yield the right-of-way to Plaintiffs' oncoming vehicle on US-77, in violation of Texas Transportation Code § 545.153(b) and the standard of ordinary care.

   b. Using a cell phone or similar device while operating the vehicle, taking his eyes and attention off the road at a critical moment. Using a phone while driving greatly diminishes a driver's ability to perceive and react to traffic conditions, and doing so contributed directly to his failure to notice Plaintiffs' vehicle.

   c. Failing to keep a proper lookout for other vehicles. A reasonably prudent driver in his situation would have observed Plaintiffs' approaching vehicle and yielded; the agent, however, did not see what he should have seen (due to inattention and distraction).

   d. Driving into an intersection when it was not safe to do so, disregarding the risk to oncoming traffic. He attempted to turn onto a highway despite the immediate hazard presented by Plaintiffs' vehicle, which had the right-of-way.

   e. Disregarding a clearly posted stop sign, which by law required him to stop and ensure the way was clear. This violation of a traffic control device is negligence per se under Texas law (meaning it is a breach of duty as a matter of law, intended to prevent exactly the type of harm that occurred).

    f.   Failing to prevent injury to the general public if it reasonably appears or should appear that in the exercise of their lawful rights, others may be injured by a dangerous condition that was created by the individual.

    g.   Failing to exercise reasonable care to avoid a foreseeable risk of injury to others.

22. Each of these acts and omissions constitutes a breach of the duty of care. The CBP agent's conduct fell well below the standard of care expected of a reasonably prudent driver under the same circumstances.

23. The CBP agent's negligence was the proximate cause of the collision and Plaintiffs' resulting injuries. "Proximate cause" under Texas law requires foreseeability and cause-in-fact. Here, it was entirely foreseeable that failing to stop at a stop sign and driving while distracted could lead to a serious accident. The collision would not have occurred but for the agent's failure to yield and distraction; in other words, his negligence was a substantial factor in bringing about the crash, and no other independent cause intervened. The risk of a vehicle accident is the very hazard that the stop sign and traffic laws are designed to prevent, and the agent's violation of those laws directly caused Plaintiffs' harm.

24. At the time of the incident, the CBP agent was acting within the scope of his employment with a federal agency (CBP) and in furtherance of his duties (patrolling or otherwise driving in the area as part of his job). Therefore, under the doctrine of respondeat superior and pursuant to 28 U.S.C. § 2671 et seq., Defendant United States of America is vicariously liable for the agent's negligent acts as if the United States were a private employer in a similar situation.

25. Under 28 U.S.C. § 2674, the United States stands in the shoes of a private person and is liable for the tortious conduct of its employees to the same extent a private employer in Texas would be liable. If a private individual or entity in Texas had an employee who negligently caused

a car accident under these circumstances, that employer would certainly be liable for the resulting damages. Therefore, Defendant United States of America is liable to Plaintiffs for all their injuries and losses caused by the CBP agent's negligence, in accordance with Texas law and the FTCA.

## V.   DAMAGES

26. As a direct and proximate result of the Defendant's negligence described above, Plaintiffs have sustained extensive damages. Under the FTCA, Plaintiffs are entitled to recover compensatory damages for their losses in the same manner as in a suit against a private person under Texas law. The categories of damages for each Plaintiff include property damage, medical expenses, pain and suffering, loss of enjoyment of life, and other allowable damages. Each Plaintiff presented an administrative claim for a sum certain of $600,000, reflecting the magnitude of their damages (each claim comprised $100,000 for property damage and $500,000 for personal injury). No part of these damages has been paid by the United States. Plaintiffs now seek recovery for the full measure of their damages as allowed by law. A summary of each Plaintiff's damages is as follows:

### A.   Plaintiff Irma Rodriguez Castro

27. Irma's vehicle was destroyed in the collision. The vehicle (a recent-model automobile) was rendered a total loss. The reasonable market value of the vehicle before the crash, plus the loss of use of the vehicle and any other personal property damaged in the accident, is estimated at approximately $100,000. This includes costs related to towing, storage, and replacement of the vehicle, as well as any personal items in the vehicle that were damaged or lost.

28. Irma incurred substantial medical expenses for the treatment of her injuries. This includes ambulance and emergency room bills, hospital charges, diagnostic tests (such as CT scans or MRIs to assess head and spine injuries), physician fees, medication costs, and follow-up care. She

underwent therapy and rehabilitation for her neck and back injuries. The total of her medical bills to date is significant (expected to be in the tens of thousands of dollars), and she may require additional future medical treatment. Irma continues to experience pain in her back and neck that might necessitate ongoing physical therapy, pain management, or even surgical intervention in the future. The cost of future medical care is also a component of her damages.

29. Irma has endured significant physical pain from her injuries. In the immediate aftermath, she suffered acute pain in her neck, back, and other injured areas. She continues to experience chronic pain, especially in her spine and headaches from the concussion. This pain has required medication and has affected her daily activities. Under Texas law, she is entitled to damages for past and future physical pain and suffering.

30. The accident and injuries have also caused Irma considerable mental anguish and emotional distress. Losing consciousness in a traumatic crash and dealing with the aftermath (such as fear of driving, anxiety, flashbacks of the collision, and the stress of physical recovery) have taken a psychological toll. She has had trouble sleeping and has experienced anxiety when traveling by car since the crash. She seeks recovery for past and future mental anguish resulting from the defendant's negligence.

31. Irma's injuries have at times limited her ability to perform routine daily activities and recreational activities. During her recovery, she could not care for her young daughter or perform household tasks without assistance. She was temporarily unable to engage in hobbies like exercise, dancing, or other physical activities she enjoyed prior to the accident. Although she has made improvements, she still faces some physical limitations (for example, prolonged standing or heavy lifting may exacerbate her back pain). She seeks damages for physical impairment (loss of function) and loss of enjoyment of life, both past and future.

32. Irma also incurred other out-of-pocket expenses, such as the cost of transportation to medical appointments (while her car was totaled), over-the-counter medical supplies, and home adjustments during her recuperation. She claims these incidental damages as well.

**B. Plaintiff M.A.C.**

33. M.A.C. incurred medical costs due to her injuries in the collision. She was evaluated in the emergency department and underwent diagnostic imaging (such as X-rays or scans) to check for internal injuries or fractures. The total of her medical bills to date is substantial. M.A.C. may also require future medical care; for instance, if her post-concussion symptoms persist, she might need neurological evaluations or therapy, and if her neck/back pain continues, further treatment or pain management could be necessary. The anticipated costs of any necessary future treatment are included in her claim.

34. M.A.C. experienced and continues to experience physical pain as a result of the crash. She had intense neck and shoulder pain from the whiplash injury, frequent headaches due to the concussion, and back pain that lasted for weeks or months. Everyday activities such as sitting for extended periods or carrying objects became painful for her during her recovery. She still occasionally feels stiffness or pain, especially with strenuous activity. She claims damages for the physical pain and suffering endured from the day of the accident to the present, and likely to be endured in the future.

35. The trauma of the accident has also affected M.A.C. psychologically. She was extremely shaken by the crash. In the aftermath, she has dealt with anxiety, especially as a passenger or driver in a vehicle, fearing another accident. She has experienced mood changes, sleep disturbances (nightmares about the accident), and general loss of sense of security. The shock of the collision and the pain of her injuries led to periods of depression and irritability during her recovery. M.A.C.

seeks compensation for her past and future mental anguish and emotional distress attributable to the Defendant's negligent actions.

36. M.A.C.'s injuries have temporarily diminished her ability to enjoy life's activities. Prior to the accident, M.A.C. was active and enjoyed social and physical activities (for example, exercise and sports). After the accident, her injuries forced her to curtail these activities for a significant period. While she has gradually resumed most of her routine, she is still cautious and has not fully regained the carefree enjoyment she had before. She worries about her physical condition and the possibility of lingering effects. Damages for loss of enjoyment of life are warranted to address these qualitative losses.

37. Although M.A.C. is on a path to recovery, there is a possibility that some of her injuries could have lasting effects. For instance, cervical spine injuries can sometimes lead to chronic neck pain or predisposition to future injuries. Concussion can occasionally result in prolonged post-concussive syndrome. She will remain vigilant about these potential issues. If any permanent or long-term impairment results (even minor), it represents a harm for which she should be compensated. At present, she hopes to make a full recovery, but the uncertainty itself and the time spent recovering are part of the damages she has sustained.

### C. Summary

38. Each Plaintiff has currently estimated their total damages at $600,000 (the amount each sought in the administrative claim). These estimates encompass all the categories listed above. Plaintiffs reserve the right to adjust the exact amount of damages proven at trial, but in no event will they seek an amount in excess of the total presented administratively, except as permitted by 28 U.S.C. § 2675(b) (for example, if unforeseen complications arise). The damages include both economic losses (such as medical bills, lost income, and property damage) and non-economic

losses (pain, suffering, mental anguish, etc.). No punitive damages are sought, as the FTCA does not allow them (nor are they applicable here). Plaintiffs simply seek fair compensation for the injuries and losses they have suffered due to the negligence of the United States' employee.

## VI.  JURY DEMAND

39. Demand is hereby made for a jury to decide all fact issues in this case, and Plaintiffs have tendered the jury fee.

## VII.  PRAYER

WHEREFORE, Plaintiffs pray that Defendant be cited to appear and answer, and that upon a final hearing, Plaintiffs recover judgment against Defendant, jointly and severally, for damages, including actual and special damages, exemplary damages, pre-judgment and post-judgment interest, attorney's fees and expenses, costs of court, and all other relief, at law and in equity, to which Plaintiffs might be justly entitled to receive.

Respectfully submitted,
**MBMT LAW FIRM**
1201 E. Van Buren
Brownsville, Texas 78520
Ph. (956) 550-4868
Fax (956) 621-0135

Tomas F. Tijerina
State Bar No. 24070746
ttijerina@mbmtlawfirm.com
Benigno (Trey) Martinez
State Bar No. 00797011
trey@mbmtlawfirm.com
**ATTORNEYS FOR PLAINTIFFS**